IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Juan Salgado, | ) | C/A No.: 1:09-2351-JFA-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Mary M. Mitchell, Warden, | ) | |
| Defendant. | ) | |

Plaintiff, Juan Salgado, proceeding pro se, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff is an inmate at the Federal Correctional Institution (FCI) in Edgefield, South Carolina, a facility of the Bureau of Prisons (BOP), and files this action *in forma pauperis* under 28 U.S.C. § 1915. The complaint names the Warden of FCI Edgefield, Mary M. Mitchell, as the sole Defendant.

Before the court is Defendant's Motion to Dismiss [Entry #8]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) and (e), D.S.C., the undersigned is authorized to review such complaints for relief. Because the motion to dismiss is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff filed his complaint in this action on September 10, 2009 [Entry #1]. Defendant's motion to dismiss was filed on November 24, 2009 [Entry #8]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the

summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's motion [Entry #9]. Plaintiff initially failed to respond, but advised the court he intended to respond. [Entry #11]. Plaintiff filed a response in opposition to Defendant's motion to dismiss on February 16, 2010 [Entry #12] and Defendant filed a reply [Entry #13]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendant's motion to dismiss be granted.

Plaintiff alleges he is being forced to remain in segregation because inmates at FCI Edgefield who are part of Mexican gangs will not allow him to be on the compound unless he joins their gang. (Compl. 3–4) He claims Mexican gang members are free to spread fear and terror on the Mexican inmate population at FCI Edgefield. (*Id.*) He states it is a violation to make him stay in segregation. (*Id.*) He claims Defendant knows or should know that it is not right to allow inmates to govern other inmates. (*Id.*) He requests that the court order Defendant to stop the Mexican gang members from harassing Mexican non-gang members and transfer him to another compound. (*Id.*) He asks the court to award him $200,000 in punitive damages. (*Id.*)

II.  Standard of Review

When considering a motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

III. Analysis

Plaintiff is bringing suit against the warden of a federal prison. As such, his constitutional claims are evaluated under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits." *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457

U.S. 800, 814-820, n. 30 (1982). *See also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

    A.    Exhaustion of Administrative Remedies

Defendant has moved to dismiss the complaint based in part on the defense of Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires

"proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The Bureau of Prisons has a three-tiered administrative grievance process. See 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. §542.15(a).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 94-95. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of

the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

In his complaint, Plaintiff admits that he has not exhausted his administrative remedies. (Compl. 2) (Plaintiff marked "No" in response to question of whether he has not received a final answer to his grievance). Defendants submit that a review of the computerized records maintained on SENTRY, the computer-based system on which all federal inmate submissions are permanently recorded, reveals Plaintiff has not exhausted his administrative remedies regarding any allegations set forth in the complaint. Cassaro Aff. [Entry #8-2]. Based on SENTRY entries and on the filings in the present lawsuit, it appears that at or about the time Plaintiff filed his first administrative remedy with Defendant requesting a transfer, he filed the lawsuit at hand. (*Id.*) Plaintiff's

administrative remedy was rejected at that time because he did not submit it through his counselor. (*Id.*) Subsequently, Plaintiff resubmitted his administrative remedy requesting a transfer because he alleged that the Mexican inmates who are in gangs would not allow the Mexican inmates who are not in gangs to be on the compound at FCI Edgefield. (*Id.*)

On November 2, 2009, Defendant responded to Plaintiff's remedy request. (*Id.*) Defendant informed Plaintiff that he had been placed in SHU pending an investigation into his allegations about his safety. (*Id.*) She informed Plaintiff that the investigation showed there was no evidence to suggest that there was a verifiable threat to his safety in the general population at FCI Edgefield. (*Id.*) Therefore, Defendant denied Plaintiff's request for transfer. (*Id.*). Plaintiff has not appealed Defendant's response to the Regional Director or the Central Office. (*Id.*)

Plaintiff claims in his response to the motion to dismiss that he has requested the appropriate grievance forms to exhaust his administrative remedies, but has not received them. However, this allegation does not salvage Plaintiff's case from dismissal, as the current lawsuit was signed August 31, 2009, and filed September 10, 2009, well before Plaintiff received a response to his grievance on November 2, 2009. Plaintiff has not exhausted his administrative remedies and his claims are therefore not ripe for judicial review and should be dismissed.

B.  Qualified Immunity

Defendant also asserts she is entitled to qualified immunity in her individual capacity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982),

established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendant is entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendant, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendant, and therefore, the existence of a constitutional deprivation, Defendant is still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, Defendant performed the discretionary functions of her official duties in an objectively reasonable fashion. Defendant did not transgress any statutory or constitutional rights of Plaintiff that she was aware of in the discretionary exercise of her professional judgment. Thus, to the extent the district judge finds that a constitutional violation occurred, Defendant is entitled to qualified immunity.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss [Entry #8] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

July 26, 2010
Florence, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**